## No. 12,625.

### EDWARD TALLE ET ALS. VS. MRS. WIDOW N. ANTONIO DE MONASTERIO ET ALS.

Plaintiff in a petitory action asserting his own title, attacked defendant's title as being based upon an absolutely null tax sale, and prayed for rent and also for damages. Defendant answered, averring that being a creditor of the plaintiff, the latter had suggested to him that the property be permitted to be sold for taxes, and that defendant should purchase it, and that plaintiff's indebtedness to defendant be then canceled; that this was accordingly done, and plaintiff was estopped from attacking the tax sale. He set up no demands in reconvention or compensation. The District Court set aside the tax sale, rejected plaintiff's demand for damages, and was silent as to the demand for rent. Plaintiff appealed. Defendant made no demand for an amendment.

The Supreme Court decreed that the judgment of the District Court in so far only as it dismissed and rejected plaintiff's demand for fruits and revenues be annulled; that in so far as it decreed plaintiff the ownership of the property and dismissed defendant's reconventional demand, it be left in full force; that the right be reserved to plaintiff to claim the fruits and revenues of said property, and the cause be remanded to the lower court for further proceedings according to law. On the return of the cause to the District Court, defendant filed a supplemental answer setting up, by way of defence through compensation, a number of claims against the plaintiffs. Plaintiff resisted proof of these claims

on a plea of *res judicata* under the decree of the Supreme Court. The plea was overruled, the District Court stating it understood the decree of the Supreme Court to have remanded the cause to enable plaintiff to claim fruits and revenues, the fruits and revenues of the property. That this included, also, the right of defendant to plead *de novo* whatever she might have compensation. *Held:* That the District Court in holding that the judgment of the Supreme Court did not cut off defendant's right of resisting demands, though a plea of "compensation" was correct. The purpose and intention of the judgment was to force defendants, by reason of their having acquiesced in the judgment of the District Court, to occupy on the return of the cause a purely defensive position, cutting them off from setting up reconventional demands, but not pleas in compensation.

When by the consent of the owner of property. the legal title thereto has been placed in the name of one of his creditors, under an agreement, that he should hold the same until the amount due him should be paid, the owner has no right to ignore the latter's right of detention until a balancing of accounts had been had, and by and through a petitory action recover both the property and the rents, leaving her own debts unpaid.

A PPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Theo. Cotonio* for Plaintiffs, Appellants.

*Horace E. Upton* and *Anatole A. Ker* for Defendants, Appellees.

Argued and submitted February 26, 1898.
Opinion handed down April 4, 1898.
Rehearing refused May 16, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J. This case was, by judgment of this court, rendered in 1896, and found reported in 48 An., p. 1232, remanded to the District Court for further proceedings.

The plaintiffs in the suit claimed to be the owners of certain property described in their petition which they alleged was in illegal possession of the defendants under an unwarranted and unjustifiable claim of ownership based upon a tax sale to N. Antonio de Monasterio on the 25th of February, 1876. They averred that notwithstanding the illegal adjudication of the property at tax sale, they, within six months of the same, made a legal tender to the purchaser of the price paid by him with fifty per cent, and all costs added, but

that he refused the tender and declined retransferring the property for any amount less than two thousand dollars. That De Monasterio had died, that he and his wife and his heirs had held the property in bad faith ever since February, 1876; that Monasterio had in the month of February, 1876, illegally and forcibly and maliciously ejected and dispossessed them of the possession of the property, and by reason of said acts had come under a liability to plaintiffs for rental, and also for actual and exemplary damages—the damages being fixed at over eight thousand dollars and the rental at the rate of fifteen dollars per month, from the date of taking possession, February 25, 1876. They prayed judgment for the ownership and possession of the property with rents and damages as declared upon in the petition. Defendants answered that at the date of the purchase at the tax sale, Edward Talle and the community between him and his wife, Teresa Loren (the said wife being then living), were indebted to Monasterio for groceries sold him in the sum of five hundred dollars; that he also owed him about two hundred dollars for city and State taxes paid by him at his request; that he had also acquired from one Dr. Lott, a note of Talle's for four hundred dollars; that the whole of this indebtedness amounting to eleven hundred dollars was recognized by Talle as being due by him to Monasterio at the time of the sale. That just before and at the time of said tax sale, Talle asked him to purchase said property, giving as a reason that he was heavily in debt, and was unable to pay the taxes, and he, Monasterio, was his creditor and he desired him to become the purchaser.

That in consequence of said special request he purchased the property, and as a consideration therefor canceled Talle's indebtedness to him of eleven hundred dollars.

That after he had so purchased the property Talle entered into a contract of lease with him and for a period of about eighteen months actually paid him rent for the property. That thereafter he failed to pay the monthly rent, and Monasterio sued and recovered judgment against him therefor. That failing to pay the judgment Monasterio brought suit to recover the possession of the property and obtained a judgment against him under which he was legally ejected and evicted from the premises.

That Talle set up no right or claim to said property in any of said judicial proceedings, but as in duty bound acquiesced therein, and

he was estopped from setting up any title to the property. That since the sale Monasterio had paid taxes on the property to an amount of about twelve hundred dollars.

The prayer of the answer was that plaintiff's demand be rejected with costs; that the property referred to be decreed to belong legally to the succession of Monasterio; that plaintiffs be decreed estopped from setting up the nullity and invalidlty of the title for the reasons stated. Defendants, reserving the right to answer (further) if need be, prayed that the title to the property be decreed good and valid and for general relief.

On the 25th of March, 1895, the District Court rendered judgment in favor of the plaintiffs, setting aside the tax sale under which the defendants claimed the ownership of the property and decreeing plaintiffs to be the owners of the same. It also rendered judgment dismissing plaintiffs' demand for damages and decreed that defendants pay the costs.

Plaintiffs appealed from this judgment.

Defendants did not appeal, nor did they on appeal pray for any amendment or modification of the same.

On appeal the Supreme Court reversed the judgment of the District Court, setting aside the tax sale and decreed that plaintiffs' demands be rejected at their costs.

In the body of its opinion this court, referring to the judgment of the District Court appealed from, said that it annulled the sale and " decreed the plaintiffs to be the owners of the property—rejecting their demand for damages—that it made no disposition of defendants' pleas of prescription—*the claims for revenues being compensated doubtless by taxes paid,*" etc.

On application for a rehearing appellants called to the attention of the court that defendants had not appealed from the judgment, nor prayed any amendment or modification of the same, and insisted that in view of that fact the only matters before the court for review was plaintiffs' demand for damages, which had been rejected, and for revenues, as to which the judgment appealed from was silent. That the correctness of the judgment as to the legality of the tax sale and the ownership of the property was not, under the circumstances, before the court.

This court, considering this contention to be well founded, set aside the judgment it had first rendered, substituting in its place (Talle vs.

Monasterio et als., 48 An. 1232) the following judgment: "It is ordered, adjudged and decreed that the judgment of this court previously rendered in this case be set aside and annulled. It is further ordered, adjudged and decreed that the judgment of the lower court, in so far only as it dismisses and rejects plaintiffs' demands for fruits and revenues, be annulled; said judgment, in so far as it decrees plaintiffs the ownership of the property, and dismisses defendants' reconventional demand, being left in full force and untouched by this decree, and it is further ordered and decreed that as to fruits and revenues of said property, the right to claim which is reserved to plaintiffs, that this case be remanded to the lower court for further proceedings and another trial, and that defendant pay costs."

Upon the return of the case to the District Court the defendants filed an amended or supplemental answer, in which they alleged that in addition to the indebtedness of plaintiffs to defendants as set forth in their original answer and as further offsetting any claim which plaintiffs might have for rents and revenue-, they had, since their purchase at tax sale of the property, paid for the preservation of the same at least one hundred and forty-four dollars insurance premiums, two hundred dollars for repairs, and two hundred dollars or thereabout for taxes due at the date of purchase, this being an indebtedness due by plaintiffs in addition to the eleven hundred dollars detailed in their original answer. That the city and State taxes paid by them since their purchase, with legal interest thereon, aggregate fully six hundred and fifty dollars, which they were also entitled to plead as an additional offset against any claim which plaintiffs might have for rents and revenues, respondents having been possessors in good faith. They prayed that plaintiffs' suit be dismissed and their plea of compensation of two thousand three hundred and eighty-nine dollars be maintained against any claim which plaintiffs might establish as due them for fruits and revenues.

Plaintiffs objected to the filing of this answer, on the ground first, that it came too late, that no supplemental or amended answer could be filed at that stage of the proceedings, because the cause had been remanded by the Supreme Court on a particular issue and on the papers and pleadings on file; that it set up a counter claim or set-off in addition to the one in the original answer; that this claim for taxes, insurance and repairs was disallowed by the Supreme

Court and its judgment had the force of *res judicata;* that if defendants had had any additional claim it should have been urged when the original claim was urged and it was now too late to do so.

The court overruled the objections. It stated it considered that it had the right to permit the amended answer under its discretionary powers; that it did not place the same interpretation upon the decision of the Supreme Court which counsel did.

To this ruling plaintiffs excepted.

Upon the trial of the case plaintiffs objected to any evidence going to support defendants' claim in compensation on the ground that that issue was not before the court, the claim of the defendants having been dismissed by the District Court and affirmed by the Supreme Court on appeal. The court overruled the objection. The testimony was admitted and plaintiffs excepted.

The District Court rendered judgment in which it declared that " on the second trial the court finds the amount of rents and revenues to be sixteen hundred and sixty-one dollars; that defendant is entitled to plead in compensation the following amounts paid by them:

| | |
|---|---:|
| Note due by plaintiffs to defendants | $400 00 |
| Groceries, etc. | 500 00 |
| Repairs of property | 300 00 |
| Insurance | 144 00 |
| States taxes | 252 38 |
| City taxes | 723 53 |
| Total | $2,319 53 |

That " defendants' supplemental answer and plea in compensation is therefore maintained and plaintiffs' suit for the fruits and revenues is dismissed, plaintiff to pay all costs."

In its reasons for judgment it said: " The court understands that this case has been remanded by the Supreme Court to claim the fruits and revenues of the property decreed by this and the Supreme Court to belong to the plaintiff. This included also the right of defendant to plead *de novo* whatever claim she may have in reconvention or set-off.

The court understands the Supreme Court to have affirmed the judgment of this court in so far as the real estate and plaintiffs' claim for damages are concerned, the only questions before them on appeal."

The plaintiffs appealed.

The first question we are called on to consider is the correctness

or incorrectness of the action of the District Court in permitting defendants over plaintiffs' objection to support their plea in compensation by testimony.

Plaintiffs' objections were that the District Court, in its original judgment, had dismissed all claims which defendants had set up, and that the Supreme Court, on plaintiffs' appeal, had affirmed the judgment of the lower court to that effect. In this proposition, plaintiffs are in error. Plaintiffs, in their petition, claimed to be the owners of the property, contending that their ownership had never been divested through a certain tax sale, under which they averred defendants were in possession and under which they claimed title; that defendants obtained possession of the property in bad faith and through force and their possession had continued such; that plaintiffs were entitled not only to the property and its possession, but to damages for the forcible taking possession of the property and for fruits and revenues ever since it was taken possession of.

Defendants met the attack by the general issue. They then contended that Talle, being heavily indebted to Monasterio (the defendant) and to other parties and unable to meet his obligations, suggested to Monasterio that as he could not meet his obligations nor pay the taxes on the property, that it be sent to sale, and that he buy it and cancel the indebtedness which plaintiff was under to him; that Monasterio agreed to this and bought the property at tax sale. That he canceled Talle's debt, as he had agreed to do, and that after his purchase he had paid the taxes on the property and made various outlays upon the same which he detailed. That after his purchase, Talle agreed to hold possession as lessee and pay rent and did so for for some time, but failing finally to pay rent, he was evicted from the premises and defendants took and had held actual possession ever since. Defendants, in their answer, claimed the ownership of the property, and contended that under the circumstances stated plaintiffs were estopped from raising any question as to the legality of the tax sale, which, *quoad* the plaintiffs, was a sale proposed by and acquiesced by themselves.

On the trial of the cause defendants do not appear to have made out to the satisfaction of the court the circumstances of the tax sale to have been such as to estop the plaintiffs from contesting its legality. Applying legal tests to that sale, the court was of opinion it could not stand, and, therefore, set it aside and decreed plaintiffs

be still the owners of the property. It rejected plaintiffs' demand for damages, and was silent as to plaintiffs' demand for fruits and revenues, and also silent as to any right of possession.

It will be seen that defendants filed no plea either in reconvention or in compensation, but relied upon being declared to be the owners of the property under the peculiar circumstances under which they took possession of the property.

It was only after the court had determined to set aside and had set aside the tax sale itself, and by so doing had deprived defendants of the ownership claimed, that the question of the attitude of the plaintiffs and the defendants relatively to each other by reason of the claim for fruits and revenues on the one hand and the indebtedness of the plaintiffs to the defendants and the fact of the disbursements made by defendants on the property, on the other hand, came to be considered and disposed of by the court *not under any plea of reconvention or compensation made,* but evidently under defendants' prayer for general relief, and as equitable conditions attached by the court to the granting of plaintiffs' demand for ownership. This court was clearly right in the view taken by it in its first opinion, that the failure of the District Court to give plaintiffs judgment for fruits and revenues was obviously, because whatever claims plaintiffs might have had to the same were met and compensated by just claims for offsets.

Defendants were evidently satisfied with the judgment of the District Court and the disposition made by it of the question of revenues as well as that of ownership, for they did not appeal, nor did they pray on plaintiffs' appeal for an amendment of judgment.

When this court, in its original judgment on appeal, overlooking the latter fact, examined the question of the legality of the tax sale and declared the sale legal—as a matter of course no mention was made of revenues, as the conclusion reached caused that question to disappear.

When on rehearing it was brought to our attention that defendants had substantially acquiesced in the judgment, we were forced by reason of that fact, and that fact alone, to set aside our judgment and leave matters on the question of ownership, as the judgment of the District Court left them. That result necessitated a consideration by us of the demands of the plaintiffs for damages and fruits and revenues to which it had not been necessary before to discuss or ex-

amine. ⋅ We came to the conclusion from this examination that the judgment of the District Court, rejecting plaintiffs' claim for damages, was correct, but not being satisfied as to the state of the evidence on the subject of fruits and revenues, *we reversed the judgment of the District Court, which, on that issue, was substantially and practically one adverse to plaintiffs*, and remanded the case for further proceedings, but in view of the fact that defendant had acquiesced in the judgment, it was our intention to send the case back under circumstances such as not to permit defendant on the second trial to take or to gain any position which would be inconsistent with such acquiescence on their part. It was our purpose and intention to force defendants on the return of the *cause to occupy a purely defensive position* and cut them off from pleading any *reconventional demand*, by and through which a judgment over against plaintiffs could be obtained. We said nothing by which defendants' right of resistance, offset or compensation to plaintiffs' clsims for fruits and revenues, was to be cut off. It was only in so far as claims held by defendants might be sought to be made the basis for affirmative relief by defendants that we interposed a bar. Defendants and the District Court understood that matter correctly, for defendants did not attempt, on the second trial, to advance upon the plaintiffs, but simply resisted attack. This they were clearly entitled to do. The very question of ascertaining whether plaintiffs had a right to fruits and revenues involved an examination of any good reason which might exist for the non-existence of such right.

When the case went to trial after the tax sale had been finally disposed of, and the ownership of the property could no longer be reopened, the plaintiff Talle admitted as a witness on the stand that this tax sale which he had successfully attacked as being illegal had really been made use of by an arrangement between himself and De Monasterio to relieve the plaintiff from pecuniary embarrassments which threatened him with a loss of the property from other parties. That De Monasterio bought the property at the tax sale under this arrangement and with his consent, though he denied that De Monasterio himself was his creditor at that time.

Seymour, a witness who seems to have been a friend of both parties and to have been well advised of the relations between them, testified that it was he himself who suggested to them that a tax sale be utilized for the protection of the plaintiff. He said that

at the time of the sale Talle was indebted to De Monasterio, and he suggested that the latter buy the property and hold it until the debt due to him should be paid off. On this particular point he differs from the claim made by defendant, which is not that the property should be held in order to " work out " the debt or as security, but that the purchase was absolute and not with a power of redemption. De Monasterio being dead the exact facts of the case are left in some doubt, but we are satisfied that Talle was indebted to De Monasterio at the time of the sale and acquired the legal title by reason of that fact with Talle's approbation and consent. We are satisfied also that it was expected that De Monasterio should restore the property to Talle at some future time, but under what precise circumstances we do not know. Whether the return was conditional upon payment to be made within a given time, or whether De Monasterio was himself to " work out " the debt through his possession under the legal title acquired, does not clearly appear. A notice was given by Monasterio to Talle after the sale, on the 26th of April, 1876, informing him that the six months given by law for redemption of the property having elapsed and his title having become fixed, he would exact rent from him thereafter at the rate of fifteen dollars per month, commencing on the 1st of May, 1876; that if he did not wish to pay said rent he should consider the notice as a landlord's notice to vacate the premises by the first of June next following.

Talle remained for some time after the tax sale in possession of the property.

On the 6th of June, 1876, De Monasterio brought suit in the Fifth Justice Court for possession of the property. On tne 9th of the same month the case was indefinitely continued at plaintiff's request, costs of court being paid.

In January, 1878, De Monasterio brought a second suit in the same court for possession of the property and judgment was rendered in plaintiff's favor against defeudant on the 14th of January, 1878, and a writ of possession issued on the 23d of January, 1878, and plaintiff in that suit was placed in possession under the judgment; that judgment has never been reversed or annulled or sought to be annulled or reversed.

Seymour explains the continuance of the first of these suits by saying that the parties had come to an arrangement by which Talle was

to make monthly payments to De Monasterio, and that the second suit was by reason of the fact that Talle failed to make payments as he had agreed to do.

In *November, 1878,* Talle brought a suit against De Monasterio (No. 2350), in which he alleged that he was the owner of the property that Monasterio claimed to be the owner of, and was then in possession of the same under a tax sale; that he had no title to said property, and could not, to petitioner's annoyance, exercise ownership, and that unless restrained and enjoined, he would interfere with petitioner in his right of ownership and enjoyment thereof. ' He prayed for an injunction restraining Monasterio from interfering with him in any manner in the enjoyment and possession of the property or doing anything which interfered with him in the ownership and possession thereof, and that he be decreed the owner of the property. An injunction was ordered to issue. He subsequently filed a supplemental petition, in which he alleged that Monasterio had been in the full enjoyment of the revenues of the property since the tax sale and was bound to account to him for the revenues at the rate of fifteen dollars per month. He prayed for judgment for such revenues. This suit was dismissed on the 26th March, 1881.

In May, 1881, he brought another suit (No. 3404) against defendant for the ownership and possession of the property and for revenues at the rate of fifteen dollars per month from the date of the tax sale. He also alleged that he had been illegally and forcibly dispossessed of the property in February, 1877, and prayed for damages by reason thereof in the sum of eight thousand three hundred and seventy-four dollars.

This suit was dismissed on February 28, 1882, by reason of plaintiffs' failure to give security for costs.

In June, 1882, plaintiff brought a third suit (No. 6312) against defendant, with allegations similar to those of No. 3404.

Talle's daughter intervened therein, making herself a co-plaintiff in November, 1882. In November, 1890, defendant excepted that whatever rights plaintiff Talle might have had in the premises had been seized and sold in the suit of a Mrs. Means against Talle, and had been purchased by R. C. Stockton and Talle had no further interest in the suit.

On January 31, 1884, this suit was, on Talle's motion, discontinued, so far as he was concerned.

Plaintiffs subsequently brought another suit (No. 30926) against defendants wiih allegations similar to those in No. 3404 and 6312. The date of the filing of his suit is not given, but it must have been some time *in 1890*. Defendants pleaded *"lis pendens"* by way of exception the *pending suit* referred to being suit *No. 6312*, which defendants averred had been illegally and ineffectually sought to be discontinued. The *exception was sustained and this suit was dismissed in November, 1890*.

In the meantime in suit No. 6312, which had been discontinued in so far as Talle was concerned, several proceedings took place notwithstanding the discontinuance, but in December 1893, on defendant's exception that it should be dismissed as it had been *discontinued*, it was *dismissed*, the court assigning as a reason that it had been discontinued.

In September, 1893, the present suit was brought.

In none of these suits was there any allusion by Talle to the facts and circumstances under which Monasterio purchased the property or took possession.   There was no allusion to any indebtedness as due by him to Monasterio— there was no demand for the transfer of the legal title and the surrender of possession under a tender of payment of any amount which he might owe him; there was no call for an accounting and a comparison as to how the parties might stand, but a direct attack simply upon the tax title, precisely as if it had been held by a third person having no anterior relations with him. Had Talle, on the trial of the suit which terminated in the District Court in setting aside the tax title, given the same testimony which he did after that decision had become final and the question of ownership could no longer be called in question, we have no idea that the court would have given the judgment it did. If defendants acquiesced in it, it must have been because they were satisfied to have the title returned to the plaintiffs under that portion of the court's obvious decree that on the question of fruits and revenues there had been compensation to the extent of balancing the claims which plaintiffs and defenfants held against each.   Had defendants appealed or prayed for an amendment of the judgment they would have obtained a reversal of the judgment as to the legality of the tax title as our original judgment shows. We are of the opinion that under the circumstances under which De Monasterio bought the property, he was entitled to hold possession of the same until the

amount of Talle's indebtedness to him and all amount which he was called on to pay by reason of his holding the legal title which enured to Talle's benefit as amounts which he would have been forced to pay had he himself held the 'title should be tendered to him, or should have been acquitted. That Talle had no right to ignore defendants' right of detention until a balancing of accounts had been had and to recover both the property and its fruits, leaving his debts unpaid. The District Court, both in its original judgment and in the judgment now appealed from, was of the opinion that any claims which plaintiffs might have had for rents was met and balanced by offsets and claims legally advanced by the defendants; in fact, it recognized claims as due by plaintiffs to defendants which were cut off only by reason of defendants' pleadings and the judgment of this court holding defendant to a purely defensive position. We see no reason for decreeing that there was error in the judgment appealed from, and it is hereby affirmed.